David A. BERNOUDY, Nancy V. Bernoudy, Appellees,

v.

DURA–BOND CONCRETE RESTORATION, INC.; Ernest L. Alexander; Lee Popovich, Appellants.

No. 86–1986.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1987.

Decided Sept. 16, 1987.

Rehearing and Rehearing En Banc Denied Nov. 13, 1987.

Theodore J. MacDonald, Jr., Edwardsville, Ill., for appellants.

Martin M. Green, Clayton, Mo., for appellees.

Before LAY, Chief Judge, and ARNOLD and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

David and Nancy Bernoudy brought suit against their former employer, Dura-Bond Concrete Restoration, Inc. (Dura-Bond), and its two principal officers, Ernest L. Alexander and Lee Popovich, alleging breach of contract, wrongful discharge and common law fraud when their employment with Dura-Bond was terminated after eight months. The jury found in favor of the Bernoudys on the fraud count and awarded

actual damages against Dura-Bond and punitive damages against Alexander and Popovich. Defendants argue on appeal that the district court erred in allowing the Bernoudys to maintain a tort action for fraud arising out of an alleged breach of an at-will employment contract. Defendants assert that under Missouri law an independent tort claim arising from a breach of contract may be maintained only where the injured party can establish a breach of duty by the employer that is exclusively incidental to the contract. Defendants claim no such incidental duty was established by the Bernoudys. Alternatively, defendants argue that the Bernoudys failed to establish a prima facie case of fraud. Defendants further assert that the district court erred in excluding mitigating evidence of the Bernoudys' future earnings potential and that the award of punitive damages against Alexander and Popovich was improper since the jury awarded no actual damages against either individual. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

In 1981 the Bernoudys started a concrete restoration business in St. Louis, Missouri, named Epoxy Applicators (Epoxy). Epoxy's primary market was the residential market, focusing on relieving a homeowner's nightmare, a leaky basement. Through a business venture, David Bernoudy met Lee Popovich, the vice president and general manager of Dura-Bond, an industrial and commercial concrete restoration business. Because of their mutual business interests, Popovich and Bernoudy became friends; Popovich helped Bernoudy in his new business by teaching him the tricks of the trade.

In September of 1984 Epoxy and Dura-Bond entered into a joint business venture. After the successful completion of this project, Bernoudy and Popovich began discussing the idea of Dura-Bond acquiring Epoxy and having Bernoudy open a Dura-Bond sales office in St. Louis. Popovich stated that he was very impressed with David Bernoudy's job performance and was interested in having Bernoudy be a part of Dura-Bond. On November 20, 1984, Nancy

and David Bernoudy met with Popovich and Ernest Alexander, the president and chief executive officer of Dura-Bond, to discuss just such a possibility. At the meeting Alexander discussed with the Bernoudys the purchase of Epoxy, their future job descriptions, wages, and Dura-Bond's vacation policy. It is from the discussion of Dura-Bond's vacation policy that the present dispute arises.

At trial, all parties agreed that Alexander explained to the Bernoudys Dura-Bond's vacation policy, i.e., one week after one year of employment, two weeks after two years, and three weeks after eight years. The Bernoudys, however, testified that Alexander went beyond merely stating the policy. Nancy Bernoudy testified that at the point the vacation policy was discussed Alexander turned to her and David Bernoudy and said, "And, of course, you will be employed for not less than eight years." She then testified that at this point Lee Popovich nodded his head in agreement and that they (the Bernoudys) said "yes." David Bernoudy's testimony was essentially the same as his wife's on this point. During the remainder of the meeting, other terms of the offer were discussed, but all of the parties agree that after this point no one again mentioned duration of employment. Both Alexander and Popovich denied at trial that Alexander ever told the Bernoudys that they would be employed for not less than eight years.

The Bernoudys began their employment with Dura-Bond on January 1, 1985. Eight months later they were fired due to alleged inadequate job performance. The Bernoudys thereafter brought suit in district court alleging breach of contract, wrongful discharge, and fraud. The jury returned verdicts in favor of defendants on the breach of contract and wrongful discharge counts but awarded the Bernoudys $120,000 each in actual damages against Dura-Bond and $15,000 each in punitive damages against both Popovich and Alexander.

## II. ANALYSIS

Defendants first argue that this court's decision in *Deschler v. Brown &*

*Williamson Tobacco Co.,* 797 F.2d 695 (8th Cir.1986), precludes the Bernoudys from maintaining their fraud action. In *Deschler* this court held that under Missouri law "an at-will employee may not bring a wrongful discharge action sounding in tort," unless the duty breached is exclusively incidental to the contract. *Deschler,* 797 F.2d at 697. Defendants contend that since the Bernoudys were at-will employees and have not established that one of the defendants breached a duty incidental to their employment contract, their fraud action should be dismissed. We do not agree.

*Deschler* is factually inapposite to the present case. In *Deschler,* plaintiff executed a written employment agreement with his employer. The agreement specifically provided that it was to be an at-will contract, terminable at any time by either of the parties. After plaintiff was fired he brought suit alleging that his employer had orally promised upon signing the contract that "he would have a job for life as long as he was honest, loyal, and industrious." *Deschler,* 797 F.2d at 696. The plaintiff asserted that in reliance on these oral statements he had performed his job competently and rejected other job offers. This court affirmed the district court's dismissal of the tort count. The court stated that plaintiff's claim of fraudulent misrepresentation arose out of the contract claim and alleged no breach of an independent duty incidental to the contract. *Deschler,* 797 F.2d at 697. It amounted "merely to a restatement of his contract claim," and therefore was without merit. *Id.*

The claimed fraud in *Deschler* was the employer's misrepresentations of the duration term of the agreement to plaintiff. Plaintiff, although he signed an at-will contract, believed that he was signing a lifetime employment contract. The employer allegedly misrepresented what plaintiff was actually signing. The fraud was therefore intimately related to the actual agreement and consequently arose from the breach of the contract.

In *General Dynamics v. Selb Mfg Co.,* 481 F.2d 1204 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974), upon which the *Deschler* court relied, the court made clear that under Missouri law only when the tort action arises from the breach of contract is a plaintiff precluded from maintaining a breach of contract and a tort action against his employer. *See Dake v. Tuell,* 687 S.W.2d 191 (Mo.1985) (en banc).[1] Under Missouri law "a tort action *arising* from a breach of contract may be brought only if the duty owed is superimposed by operation of law as an incident of the relationship between the parties rather than the contract." (Emphasis added.) *General Dynamic Corp.,* 481 F.2d at 1216.

The Bernoudys alleged that as an inducement to work for Dura-Bond and prior to any agreement, Dura-Bond made false representations which it never intended to keep and which they relied on to their detriment. Dura-Bond did not, as did defendant in *Deschler,* misrepresent to the Bernoudys what the terms of the written contract were; rather, it induced the Bernoudys to leave their old positions by fraudulently misrepresenting what the Dura-Bond—Bernoudy relationship would encompass. The fraud, therefore, does not arise out of the contract; it arises out of the negotiations prior to the employment agreement.

The fraud count, moreover, is not "merely * * * a restatement of [the] contract claim." *Deschler,* 797 F.2d at 697. On the fraud count, the Bernoudys had to establish that Dura-Bond made certain representations to them, namely, that it would employ them for eight years; that Dura-Bond intended the Bernoudys rely upon such representation in accepting employment with Dura-Bond; that such representation was false and defendants knew it was false;

1. In *Dake v. Tuell* the Missouri Supreme Court held that an at-will employee cannot maintain a wrongful discharge action against his employer. The court implies that a wrongful discharge action arises from a breach of a contract because "an at will employee must set forth in his petition for wrongful discharge 'the essential elements of a valid contract, and a discharge in violation thereof.'" *Dake v. Tuell,* 687 S.W.2d at 193 (quoting *Maddock v. Lewis,* 386 S.W.2d 406, 409 (Mo.), *cert. denied,* 381 U.S. 929, 85 S.Ct. 1569, 14 L.Ed.2d 688 (1965)).

that such representation was material to the Bernoudys' decision to accept employment at Dura-Bond; that they relied and had a right to rely on the representation in accepting employment; and that as a direct result of the representation they were injured. *Sofka v. Thal*, 662 S.W.2d 502, 506 (Mo.1983); *Misskelly v. Rogers*, 721 S.W.2d 170, 172 (Mo.App.1986). The fraud claim required a showing of fraudulent intent at the time Dura-Bond made the promise that induced the Bernoudys to enter into the agreement with Dura-Bond, while the breach of contract claim required a showing that Dura-Bond broke its promise after the parties entered into the agreement. *See McDonald v. Johnson & Johnson*, 776 F.2d 767 (8th Cir.1985) (two separate causes of actions exist where fraud and contract claims arise from separate and distinct acts).

Furthermore, there was no chance that the Bernoudys would be compensated twice for the same injury. *See Ross v. Holton*, 640 S.W.2d 166, 173 (Mo.App.1982) (a party cannot be compensated for the same injury twice). The jury was instructed that one remedy mutually excluded the other. If the jury found that Dura-Bond had breached the contract, it could not find fraudulent misrepresentation, and vice versa.

■ Defendants next claim that the district court erred in denying its motions for directed verdict and judgment notwithstanding the verdict on the fraud count. Defendants argue that under Missouri law the Bernoudys have not established a prima facie case of fraud.

The standard for granting a motion for a directed verdict is whether the evidence, when viewed in the light most favorable to the moving party, is such that reasonable people could only conclude that the movant should prevail. *Hale v. Firestone Tire & Rubber Co.*, 820 F.2d 928, at 936 (8th Cir. 1987). The standard for granting judgment notwithstanding the verdict is pre-

cisely the same as the standard for directing a verdict. *Id.* at 936.

We hold that the district court did not err in denying defendants' motions. The evidence introduced regarding the oral promise of employment for eight years, although perhaps razor thin, was sufficient to create a jury question as to whether defendants had fraudulently misrepresented to the Bernoudys the duration of their employment agreement.

■ Defendants next argue that the district court erred in refusing to admit evidence of the Bernoudys' future probable earnings as mitigation of the award of actual damages. We agree.

The jury based its award of actual damages on the Bernoudys' lost earnings. The district court, however, allowed defendants to introduce as mitigation only the Bernoudys' earnings up to the time of trial, refusing to admit evidence of David Bernoudy's future earnings potential. Under Missouri law the principle of mitigation of damages applies equally in tort and in contract. *Fletcher v. City of Independence*, 708 S.W.2d 158, 171 (Mo.App.1986); *Douglas v. Stephens*, 18 Mo. 362, 366 (1853) (a tort victim is bound to protect himself from damages by any reasonable exertions). The injured party owes the duty of reasonable effort to minimize the damage and avoid future loss. *Braun v. Lorenz*, 585 S.W.2d 102, 108 (Mo.App.1979).[2] This includes future wage loss.

Because defendants should have been allowed to demonstrate that Bernoudys' injury could be partially mitigated, we reverse the judgment as to actual damages and remand to the district court for a new trial on that issue.

Because punitive damages "must have some reasonable relationship to the injury inflicted," *Ogilvie v. Fotomat Corp.*, 641 F.2d 581, 586 (8th Cir.1981) (citing Mo. cases), and the injury is measured by the actual damage award, we must also set aside the punitive damage award. On re-

---

**2.** The burden of proof of mitigation is, however, on the defendant who must show the opportunity the injured party had to mitigate and the reasonable prospective consequences. *Shaugh-*

*nessy v. Mark Twain State Bank*, 715 S.W.2d 944 (Mo.App.1986); *Braun v. Lorenz*, 585 S.W.2d at 108.

mand the jury is free to again assess punitive damages. We do not agree with defendants' argument that a punitive damage award against Alexander and Popovich cannot stand without an award of actual damages. Although it is the general rule in Missouri that there can be no punitive damages without an award of actual damages, *Melville v. Cheryl Scott Real Estate Co.,* 664 S.W.2d 529 (Mo.App.1983), in the present case because the party found liable for actual damages is intimately related to the individual defendants, there is a sufficient nexus for the award of punitive damages.

We have thoroughly reviewed defendants' other assertions of error and find them to be without merit.

The district court's judgment is affirmed as to liability and reversed as to damages, both actual and punitive. The case is remanded to the district court for a new trial on damages.